UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------
IN RE:                                   )        Case No. 10-23045 (ASD)
                                         )
JOSEPH V. BAK,                           )        Chapter 7
                                         )
            DEBTOR.                      )
-------------------------------------------------  )
                                         )        Adv. Pro. No. 10-02403
BARDIA GUILANI,                          )
                                         )        RE: Adv. ECF No. 52
            PLAINTIFF,                   )
v.                                       )
                                         )
JOSEPH V. BAK,                           )
                                         )
            DEFENDANT.                   )
-------------------------------------------------
```

<u>APPEARANCES:</u>

Julie D. Blake, Esq.
Claudia M. Sklar, Esq.                   Attorneys for Plaintiff
Julia B. Morris, Esq.
O'Connell, Attmore & Morris, LLC
280 Trumbull Street, 23rd Floor
Hartford, Connecticut 06103

William J. O'Sullivan, Esq.              Attorney for Defendant/Debtor
Baker, O'Sullivan & Bliss, PC
100 Great Meadow Road, Suite 100
Wethersfield, Connecticut 06109

**MEMORANDUM OF DECISION
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND
DETERMINING CERTAIN FACTS AS ESTABLISHED PURSUANT TO RULE 56(g)**

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I.  INTRODUCTION

Before the Court is an adversary proceeding in which the Plaintiff, Bardia Guilani (hereinafter, the "Plaintiff", or "Guilani"), seeks to have declared nondischargeable under Bankruptcy Code Sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6), debts allegedly owed to him by Joseph V. Bak (hereinafter, the "Debtor", "Defendant" or "Bak"), the Managing Member of a limited liability company, Hawk Integrated Plastics, LLC (hereinafter, "Hawk"), that arose in connection with the formation of Hawk, and events that transpired in the years that followed.  The Defendant has filed the *Defendant's Motion for Summary Judgment* (hereinafter, the "Motion for Summary Judgment"), Adv. ECF No. 52,[1] seeking summary judgment on two grounds: first, that the Plaintiff's four bankruptcy causes of action are based upon claims barred by statutes of limitation; and second, to the extent any of the Plaintiff's bankruptcy causes of action are based upon the Defendant's alleged violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, *et. seq.* (hereinafter, "CUTPA"), said statute is inapplicable under the facts of this case.

The Plaintiff argues in response to the first ground that the statutes of limitation are tolled by the continuing course of conduct doctrine and/or by Conn. Gen. Stat. §52-595 (also referred to as the "fraudulent concealment doctrine"), but that regardless, in the context of a summary judgment motion, there exist genuine issues of material fact as to their applicability.

As to the second ground, in the Plaintiff's *Objection to Defendant's Motion for Summary Judgment,* Adv. ECF No. 63 p.1, fn. 1, the Plaintiff concedes that his CUTPA

---

[1] As used herein, "ECF No. __" and "Adv. ECF No. __" refer to pleadings docketed in Bankruptcy Case No. 10-23045 and Adversary Proceeding No. 10-02403, respectively.

claim is "barred by the well-settled doctrine that purely intracorporate disputes [as in this proceeding] do not constitute CUTPA violat[ions]." Therefore, the Plaintiff states that he will "not object to the entry of summary judgment as to his CUTPA claim. . . ." *Id.* Notwithstanding the parties agreement on this point, the Court notes that while a violation of CUTPA was alleged in a prior state court action filed by the Plaintiff, the Plaintiff did not specifically assert a violation of CUTPA in the nondischargeability complaint, as amended, before this Court. Therefore, there is no basis for the Court to enter summary judgment on this ground in the present adversary proceeding.

As it concerns the first ground, the Motion for Summary Judgment shall be denied for the reasons discussed hereinafter. As it concerns the second ground, the Motion for Summary Judgment shall be denied for the reasons discussed in the immediately preceding paragraph, and that ground will not be dealt with any further in this memorandum of decision.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding by virtue of 28 U.S.C. § 1334(b); and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and by the consent of the parties. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I).

## III.  PROCEDURAL BACKGROUND

On September 2, 2010, the Debtor commenced the instant bankruptcy case (Case No. 10-23045) by the filing of a voluntary petition under Chapter 7 of the United States

Bankruptcy Code. Thereafter, Bonnie C. Mangan was appointed as the Chapter 7 trustee (hereinafter, the "Trustee"). On October 8, 2010, the Trustee filed the *Chapter 7 Trustee's Report of No Distribution*. As a consequence, no bar date was set by the Court for the filing of proofs of claim by creditors. The Court set December 7, 2010 as the deadline for the filing of complaints objecting to entry of a discharge, and/or for a determination of nondischargeability pursuant to §§727 and 523, respectively. *See Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines,* ECF No. 7.

On December 7, 2010, the Plaintiff commenced the instant Adversary Proceeding by the filing of a Three-Count *Complaint to Determine Dischargeability of Debt* (hereinafter, the "Original Complaint")*,* Adv. ECF No. 1, to which the Defendant filed an *Answer and Affirmative Defenses*, Adv. ECF No. 24. The Original Complaint, "brought pursuant to §§523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6)", *see* Original Complaint ¶5 (emphasis added), contained only three counts labeled "First Count", "Second Count" and "Fourth Count" seeking determinations of nondischargeability pursuant to §§523(a)(2)(A), (a)(2)(B) and (a)(6), respectively. However, on April 12, 2012  (with the consent of the Defendant, *see* Adv. ECF No. 46-1), the Plaintiff filed a Four-Count *Amended Complaint to Determine Dischargeability of Debt* (hereinafter, the "Complaint").  The Complaint added the "missing" "Third Count" seeking relief under §523(a)(4).

Specifically, through the Complaint the Plaintiff alleges in the First Count, that the Defendant obtained money from the Plaintiff by "false pretenses, false representations and/or actual fraud" and therefore, the debt should be excepted from discharge under §523(a)(2)(A); in the Second Count, that the Defendant made materially false statements

in writing respecting the financial condition of Hawk, in which the Plaintiff invested money and upon which he reasonably relied, and therefore, the debt should be excepted from discharge under §523(a)(2)(B); in the Third Count, that the Defendant committed fraud and/or defalcation while acting in a fiduciary capacity and therefore, the debt should be excepted from discharge under §523(a)(4). Finally, in the Fourth Count, the Plaintiff alleges that the Defendant willfully and maliciously injured the Plaintiff in that the defrauding of the Plaintiff was deliberate and intentional and therefore, the debt should be excepted from discharge under §523(a)(6).

In the *Defendant's* [Amended] *Answer and Affirmative Defenses*, Adv. ECF No. 50, the Defendant raised five affirmative defenses; first, a failure by the Plaintiff to state a claim upon which relief can be granted; second, the underlying claims that form the basis of the Nondischargeability Complaint are barred by statutes of limitation; third, the claims are barred by the doctrine of equitable estoppel; fourth, the claims are barred by the doctrine of waiver; and fifth, the claims are barred by the doctrine of laches.  On June 29, 2012, the Defendant filed a Motion for Summary Judgment, accompanied by a *Memorandum of Law in Support of Defendant's Motion for Summary Judgment,* Adv. ECF No. 52-1*;* the *Defendants' Local Rule 56(a)1 Statement*, Adv. ECF No. 52-2;  the *Affidavit of William J. Sullivan, Esq. in Support of Defendant's Motion for Summary Judgment,* Adv. ECF No. 52-3; and *Attachments Nos.1 through 5*, Adv. ECF Nos. 52-4 through 8. Thereafter, on August 17, 2012, the Plaintiff filed an *Objection to Defendant's Motion for Summary Judgment* (hereinafter, the "Objection"), Adv. ECF No. 63, accompanied by a *Local Rule 56(a)2 Statement in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment*,

5

Adv. ECF No. 63-1 and *Exhibits A through F*, Adv. ECF Nos. 63-2 through 7 (including

Affidavit of Bardia Guilani) and on August 22, 2012, the Defendant filed the *Defendant's*

*Reply Brief in Support of Defendant's Motion for Summary Judgment*, Adv. ECF No 64.

## IV. SUMMARY JUDGMENT PROCEEDINGS

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) (hereinafter, "Fed. R. Civ. Pro."), made

applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056

(hereinafter, "Fed. R. Bankr. P."), states that "[t]he court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Upon consideration of a motion for summary

judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Jasco Tools, Inc. v. Dana Corp.* (*In re*

*Dana Corp.)*, 574 F.3d 129, 151 (2d Cir. 2009).

The moving party has the burden of showing that there are no material facts in

dispute, and all reasonable inferences are to be drawn, and all ambiguities resolved, in

favor of the non-moving party.  *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90

S. Ct. 1598 (1970); *see also United Transp. Union v. National R.R. Passenger Corp.*, 588

F.3d 805, 809 (2d Cir. 2009).  "As to materiality, the substantive law will identify which facts

are material. Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary will not

6

be counted. *See generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983).  In ruling upon a summary judgment motion, the Court "cannot try issues of fact, but can only determine whether there are issues of fact to be tried." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962)).

Rule 56(g), Fed. R. Civ. P., applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7056,  provides that "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case. "'The purpose of [the rule] is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues. *Republic Tobacco, L.P. v. North Atlantic Trading Co., Inc.*, 254 F. Supp. 2d 985, 997 n. 13 (N.D. Ill. 2002),'" *Geneva Int'l Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993 (N.D. Ill. 2009) (referring to Fed. R. Civ. Pro. 56(d) precursor to 56(g)). The decision of a court to enter an order finding certain facts for purposes of the litigation is a matter of discretion, evident from the use of the word "may" in the section. *See United States v. Northern States Invs. Inc.*, 670 F. Supp. 2d 778, 779 n.1 (N.D. Ill. 2009).

**B. Findings of Material Fact Not in Dispute and Relevant Law**

The following factual background is derived from the summary judgment pleadings of the Plaintiff and Defendant, including, *inter alia*, the Complaint, the Defendant's Answer and Affirmative Defenses, the Defendant's Motion and accompanying Memorandum of Law, Local Rule 56(a)1 Statement, Affidavit, and Attachments. The Court has also

considered the Plaintiff's Objection and its accompanying Local Rule 56(a)2 Statement, Exhibits and Affidavit, and the Defendant's Reply Brief, as well as its independent examination of the official record of the instant bankruptcy case and adversary proceeding. Based upon that review, the Court finds the following material facts not to be in genuine dispute and makes the following enumerated findings of fact and relevant law for the purposes of the present Motion for Summary Judgment, and entry of an Order pursuant to Fed. R. Civ. P. 56(g).

1.    The Plaintiff, Guilani, is an individual who is a former employee and Member of Hawk.

2.    The Defendant, Bak, is an individual who was the Managing Member of Hawk.

3.    Hawk was formed as a Connecticut Limited Liability Company on or about May 15, 2000, by its then sole Member, Bak, upon the filing of Articles of Organization with the Connecticut Office of Secretary of State.

5.    On or about July 27, 2000, Hawk entered into an Amended Operating Agreement, Adv. ECF No. 52-3, Attachment No. 2, executed by all its Members, which then included, Bak, Milton Edward Ives, Jr. (hereinafter, "Ives"), Timothy M. Vale (hereinafter, "Vale"), Ronald Pitlock and Guilani.

6.    The Members also executed a Members Agreement, dated on or about July 27, 2000, Adv. ECF No. 52-3, Attachment No. 4, to govern the economic ownership interests and managerial powers of each Member.

7.    In relevant part, the Members Agreement provided that upon its execution and payment by the Members of their individual investments, the Members would own

Case 10-02403   Doc 65   Filed 02/20/13   Entered 02/21/13 10:23:09   Desc Main
Document    Page 9 of 25

Economic Interests[2] in Hawk, with Bak to own a 60% interest and each of the other Members, including Guilani, to own 10%, for a total "other Membership" interest of 40%.

8.      More specifically, in Paragraph B.1., under the title "Incentive Interest in the Company," the Members Agreement first provided that upon its execution each new Member (excluding Bak), would receive  an 8% Economic Interest.  It further provided in Paragraph B.2., that, "upon execution of this Agreement the Members shall each purchase a two (2%) percent economic interest in [Hawk] for the sum of Fifty Thousand and 00/100 ($50,000.00) Dollars."

9.      Notwithstanding the above, the Members Agreement also states that Bak "shall always own and control 100% of the Management control of the Company."

10.     Following execution of the Members Agreement, Guilani contributed fifty thousand ($50,000) dollars to obtain his full 10% Economic Interest in Hawk.

11.     Shortly after the execution of the Members Agreement, Guilani  became an employee of Hawk.

12.     No later than March or April 2001, and possibly earlier, Guilani became aware that two Members of Hawk, Vale and Ives, did not invest the full amounts specified in the Members Agreement, with Vale only investing twenty thousand ($20,000) dollars and Ives only investing seven thousand ($7,000) dollars, although each received a 10% Economic Interest in Hawk under the Members Agreement.

13.      Neither the Amended Operating Agreement nor Members Agreement were amended and no other formal action taken to reflect the reduced contributions made by

_____

[2]In the Amended Operating Agreement, an "Economic Interest" is defined generally to include an interest in Hawk's net profits, losses and distributions of its assets.

Vale and Ives.

14.     At some point in time, but no later than early 2005, Guilani became aware that Bak had entered into a separate letter agreement with Vale prior to the closing to refund to him sometime in the future, his full $20,000 investment.

15.     In relevant part, ¶6.4 of the Amended Operating Agreement provides that "no Member or Economic Interest Owner shall have priority over any other Member or Economic Interest Owner, either as to the return of Capital Contributions or as to Net Profits, Net Losses or distributions . . . ."

16.     During November of 2001, Guilani was informed by Bak that his "Guaranteed Payments"[3] for working for Hawk would be reduced due to lack of cash flow and they ceased entirely between November 2001 and February 2002.

17.     Guilani resigned as an employee and Member of Hawk on or about September 22, 2005, but according to ¶12.1(d) of the Amended Operating Agreement, became an Economic Interest Owner.

18.     According to the Members Agreement, ¶6(a), upon a Member's termination from employment with the company for any reason except retirement, "the Terminated Member shall sell and the Company shall purchase all of the Company Interests owned by the Terminated Member at the time of such termination."

19.     Also according to the Members Agreement, ¶1(b), ["if] a Member leaves the Company for any reason . . . then the [Economic Interest] must be returned to Joseph V. Bak, personally, without compensation therefore except that: (i) If a member has worked

---

[3]"Guaranteed Payments" are not defined in the Amended Operating Agreement or Members Agreement but are defined in the Internal Revenue Code and relate, in relevant part, to the tax treatment of wages and benefits paid to a partner for his personal services. *See* IRS Publication 541 (2012).

for the Company for at least five (5) years from the date they signed this Agreement then they need only return six (6%) of the initial economic interests transferred herein)."

20.   On or about May 3, 2006, Bak made Guilani an offer to repurchase his Economic Interest for $18,357.00. In an Email dated April 11, 2008, Bak increased the offer to $20,352.92. The offer was not accepted by Guilani.

21.   In that same Email correspondence, when Guilani requested his Schedule K-1 Internal Revenue Service form (hereinafter, the "K-1 Form") from Hawk for 2007[4] or 2008 he was advised by Bak that he was no longer entitled to one since he was no longer a Member, and had given up all rights, except for the right to a negotiated buyout, although Guilani had received a form for each prior tax year, including at least one year in which he was no longer a Member.

22.   The K-1 Form prepared by Hawk for the tax year 2007 indicated in paragraph J that at the beginning of the calendar year Guilani had a 4% share of the profit, loss and capital of Hawk but that at the end of the tax year he held "__%" interest.

23.   On or about March 14, 2009, Guilani initiated a lawsuit by service of process against Bak in the Connecticut Superior Court for the Judicial District of Windham, Case No. WWM-CV-09-5004519 (hereinafter, the "State Court Action").  The State Court Action never went to judgment and was stayed pursuant to §362(a) on September 2, 2010, the petition date of the instant bankruptcy case.

24.   The five-count State Court Action filed against Bak was founded on breach

---

[4]The record reflects confusion as to whether Guilani received a K-1 statement for 2007. Although Guilani indicates in his Affidavit, Adv. ECF No. 63-5, that he did receive one for 2007, in Email correspondence between Guilani and Bak dated April 9, 2008, Adv. ECF No. 63-6, Guilani complains to Bak that he has not received a K-1 Form for 2007.

of contract, breach of fiduciary duty, common-law fraud, negligent misrepresentation, and

a violation of CUTPA and centered on the same nucleus of facts as are contained in this

adversary proceeding: that Bak had allowed certain members to invest less than the full

amount required in the Amended Operating Agreement and Members Agreement than was

required of other members, including Guilani, although they all received equal shares; that

Bak had failed to disclose such facts in advance of Guilani's investment; that Bak agreed

to make up the lesser investment of certain members but had failed to do and Guilani did

not learn of said failure until 2008;  that Bak had a letter agreement to reimburse Vale his

full investment in violation of the terms of the Members Agreement and had failed to

disclose its existence prior to Guilani's investment; that Vale's investment was, in fact,

repaid but not learned about by the Plaintiff until 2008; that as the result of the lesser

investments by several of the Members, Hawk was undercapitalized and was the cause

of Guilani's not being paid his full "Guaranteed Payments," as a working Member and other

damages. Guilani did not allege in the State Court Action that Bak had failed any duty to

him by refusing in 2008 to give to the Plaintiff a K-1 Form or in representing to him that he

had no further financial interest in Hawk other than a right to a buyout.

25.     Conn. Gen. Stat. §52-576(a) provides in relevant part, "No action for an

account, or on any simple or implied contract, or on any contract in writing, shall be brought

but within six years after the right of action accrues . . . ."

26.     Conn. Gen. Stat. §52-577 provides, "No action founded upon a tort shall be

brought but within three years from the date of the act or omission complained of."

27.     Conn. Gen. Stat. §52-595 provides, "If any person, liable to an action by

another, fraudulently conceals from him the existence of the cause of such action, such

cause of action shall be deemed to accrue against such person so liable therefor at the

time when the person entitled to sue thereon first discovers its existence."

## V. DISCUSSION

### A.    The Applicability of State Statutes Of Limitation in Nondischargeability Proceedings.

A "debt" is defined in the Bankruptcy Code as a "liability on a claim."  11 U.S.C.

§101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced

to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured,

disputed or undisputed, legal or equitable, secured or unsecured." 11 U.S.C. §101(5)(A).

Section 502(b)(1), which governs the allowance of claims states, in relevant part, that if a

proof of claim is filed and an objection is interposed thereto, the court shall determine the

amount of the claim except to the extent that "such claim is unenforceable against the

debtor and property of the debtor . . . under applicable law. . . ."  In *Travelers Cas. & Sur.*

*Co. of Am. v. P.G.& E.*, 549 U.S. 443, 450, 127 S. Ct. 1199 (2007), the Supreme Court

stated:

> This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. See 4 Collier P 502.03[2][b], at 502-22 (explaining that §502(b)(1) is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law" -- i.e., any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").
>
> This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. *See ibid.*

13

Indeed, we have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law,'" *Ibid. (quoting Butner v. United States*, 440 U.S. 48, 57, 54, 99 S. Ct. 914 (1979) (citation omitted).

Thus, in addition to meeting the 60-day time deadline established by Fed. R. Bankr. P. 4007(c) for the bringing of a non-dischargeability action, a plaintiff must also meet any timeliness requirements established by the non-bankruptcy law applicable to the case at hand.  In other words, if non-bankruptcy law requires that a lawsuit to establish liability on any viable ground be brought prior to applicable statutes of limitation, and the creditor has not done so, then the debt cannot be established for non-dischargeability purposes.  *G.W. White & Son v. Tripp*, No. 394-CV-681,1995 U.S. Dist. LEXIS 1887 (N.D.N.Y, February 14, 1995); *G.E. Credit Corp. (In re Dunn)*, 50 B.R. 66 (Bankr. W.D.N.Y. 1985). In a case where the lawsuit had been reduced to judgment although the suit was brought after the state statute of limitations had run, the court stated, "[T]here can be no doubt that, had the debt not previously been reduced to judgment, there would now be no liability to be excepted from discharge."  *CBR, Inc., v. David A. Naff (In re Naff)*, No. 96-2112,1997 Bankr. LEXIS 2385, *19 (Bankr. E.D. Va. July 18, 1997); *See Gleason v. Gleason (In re Gleason)*, No. 08-7084, 2009 Bankr. LEXIS 4438, *5, (Bankr. D. Kan. 2009) ("When there exists no liability that could be discharged in a bankruptcy, this Court has no authority to answer the hypothetical question whether it might be nondischargeable if the debt did, in fact, exist").

Here, it appears that the Plaintiff Guilani brought the State Court Action under all of the possible causes of action or legal theories open to him. The Defendant Bak alleges that the statute of limitations had run as to each of those causes of action by the time the State

14

Court Action commenced on March 14, 2009.[5]  Bak argues that the First Count of the State

Court Action alleging a breach of the Members Agreement, was barred by Conn. Gen. Stat.

52-576 which limits suits for breach of contract to those brought within six years from when

the "right of action accrues."  Guilani responds by asserting that Conn. Gen. Stat. §52-595

tolled the running of the statute of limitation because Bak fraudulently concealed the

existence of elements of the cause of action. Bak further alleges that the Second Count

of the State Court Action alleging a breach of fiduciary duty, the Third Count alleging fraud

and the Fourth Count alleging negligent misrepresentation were also barred by Conn. Gen.

Stat. §§52-576 and 52-777, the latter which bars suits founded on a tort brought more than

three years from the "date of the act or omission complained of." Guilani responds that

either §52-595, the fraudulent concealment tolling statute, or the "continuing course of

conduct doctrine", tolled any otherwise applicable statute of limitation as to the Second,

Third and Fourth Counts.

## B.    The Appropriateness of Summary Judgment on Statute of Limitations Grounds When Material Facts Are Not in Dispute.

"Although the basic summary judgment principles govern, summary judgment may

be particularly appropriate as to statute of limitations issues, since that defense often does

not involve a genuine question of material fact." 6 Pt. 2 J. Moore, Federal Practice P

---

[5]Courts have held that as long as the debt was "established" prior to the running of statutes of limitation, it is irrelevant whether the plaintiff's allegations in a prior state court suit corresponded to the grounds for nondischargeability under Bankruptcy Code §523. *See Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 333 (10th Cir. 1994) (debt was "established" by the entry of a judgment; *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 868 (9th Cir. 2001) (debt was "established" by the filing of a lawsuit within the statutory limitation period).  In *Brown v. Felsen*, 442 U.S. 127, 99 S. Ct. 2205 (1979), the Supreme Court held that if a creditor with both a contract and a fraud claim obtains judgment only on the contract claim in a pre-bankruptcy action, the creditor is not estopped from asserting, when the debtor later files for bankruptcy relief, that the debt is nondischargeable based on fraud.

56.17[58] at 606. This has been long recognized in the Second Circuit. *DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 424 (2d Cir. 1949)(L. Hand, J.); *Peto v. Madison Square Garden Co.*, 384 F.2d 682, 683 (2d Cir. 1967), *cert. denied*, 390 U.S. 989, 88 S. Ct. 1185 (1968)." *BellSouth Telcoms. v. W.R. Grace & Co.-Conn.*, 918 F. Supp. 533, 535 (D. Conn. 1994). The Connecticut Supreme Court has similarly stated: "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty v. Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriate on statute of limitation grounds when the "material facts concerning the statute of limitations were not in dispute," *Burns v. Hartford Hospital*, 192 Conn. 451, 452, 472 A.2d 1257 (1984).

**C.    *Whether Claims That Relate to the Transfer in 2001 Were Asserted in the State Court Action Beyond the Relevant Statutes of Limitation.***

"All common law tort claims, including claims for fraud, negligent misrepresentation, and breach of fiduciary duty, are subject to a three-year statute of limitations, which runs from the date of 'the act or omission complained of.' Conn. Gen. Stat. § 52-577." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 90 (D. Conn. 1994).

> When conducting an analysis under § 52-577, "the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." *Shuster v. Buckley*, 5 Conn. App. 473, 477, 500 A.2d 240 (1985). The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212-13, 541 A.2d 472 (1988);

*Collum v. Chapin,* 40 Conn. App. 449, 671 A.2d 1329 (1996)*; Baghdady v. Baghdady*, No. 3:05-cv-1494, 2008 U.S. Dist. LEXIS 83505 *20 (D. Conn., October 17, 2008).

The material, undisputed facts demonstrate that no later than April, 2001 and possibly earlier, Guilani became aware that two Members of Hawk, Vale and Ives, did not

invest the full amounts specified in the Members Agreement, with Vale only investing $20,000 and Ives only investing $7,000, although each received a 10% Economic Interest in Hawk under the Members Agreement and neither the Amended Operating Agreement nor the Members Agreement was amended or any other formal action taken to reflect the reduced contributions made by them. This allegedly resulted in Hawk being under-capitalized.  It is these reduced investments that formed the nucleus of the set of facts that underlay the claims asserted by Guilani in the State Court Action, and it is clear that these claims along with their direct consequences (absent possible exceptions discussed below), would be barred by Conn. Gen. Stat.§52-576 (related to action on a contract) and §52-577(related to action on a tort).  Likewise, to the extent it is the reduced contributions that form the basis of Guilani's  claim under the Complaint's Second Count that the Members Agreement contains  statements in writing respecting Hawk's financial condition that were materially false, such claim would also be barred by the applicable statute of limitations, absent an exception.

Guilani also claims that additional wrongful conduct occurring many years subsequent to this initial event, including the later refusal of Bak to acknowledge his continuing Economic Interest in Hawk; Bak's refusal to give him his Schedule K-I Form; and Bak's secret letter agreement with Vale to repay Vale his investment resulting later in its actual repayment, counterbalanced by Bak's refusal to repay Guilani his investment, all trigger the tolling of the statute of limitations under two established doctrines.

### 1.      The continuing course of conduct doctrine.

In appropriate cases, "the continuing course of conduct doctrine can toll the statute of limitations set forth in §52-577."  *Flannery v. Singer Asset Fin. Co.*, 128 Conn. App. 507,

514 (2011) (dealing with a case of breach of fiduciary duty).

> In its modern formulation, we have held that in order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act . . . The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. (Internal quotation marks omitted.)

*Bednarz v. Eye Physicians Of Central Connecticut, P.C.*, 287 Conn. 158, 170, 947 A.2d 291 (2008), quoting *Neuhaus v. DeCholnoky*, 280 Conn.190, 201-202, 905 A.2d 1135 (2006). "When presented with a motion for summary judgment under the continuous course of conduct doctrine, we must determine whether 'there is a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty.' *Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 370, 746 A.2d 753 (2000)." *Martinelli v. Fusi*, 290 Conn. 347, 357, 963 A.2d 640 (2009).

However, "the continuing course of conduct doctrine has no application after the plaintiff has discovered the harm." *Rosato v. Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004). "Upon discovery of actionable harm, the policy behind the continuing course of conduct doctrine, to preserve the ongoing relationship with the hope that any potential harm from a negligent act or omission may yet be remedied, no longer has any force." *Rivera v. Fairbank Mgmt. Props.*, 45 Conn. Supp. 154, 160, 703 A.2d 808 (1997) [20 Conn.

18

L. Rptr. 338].

> Furthermore, the accrual of the cause of action is a singular moment in time. Allowing that point in time to be pushed forward as long as it is claimed that the negligent conduct continued would eviscerate the policies underlying the statute of limitations. The plaintiff would be allowed to acquiesce in the defendant's conduct as long as it was convenient to the plaintiff. That would undermine the promotion of "finality in the litigation process"; (internal quotation marks omitted). *Billerback v. Cerminara*, 72 Conn. App. 302, 309, 805 A.2d 757 (2002); and the prevention of the "unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution." *Zapata v. Burns*, 207 Conn. 496, 508, 542 A.2d 700 (1988).

*Rosato v. Mascardo*, 82 Conn. App. at 405.

The statute of limitations began to run in this case when Guilani became aware in the Spring of 2001, that several Members were allowed to receive a 10% Economic Interest in Hawk even though they had not made the full required contributions and therefore, the terms of the Amended Operating Agreement and Members Agreement had been violated.  It was "actionable harm" because Guilani knew he had been injured and that it was Bak's conduct that caused the harm. *Id*. at 404-405. Further, Guilani's knowledge of his claim of injury was further reinforced when Bak failed to pay him the Guaranteed Payments to which he was entitled  between the period of November 2001 and February 2002.

And while Guilani claims there is conflicting evidence suggesting that it was not until 2008 that he became aware that Bak had agreed to repay Vale his full $20,000 investment, such is not the case. In order to for a fact to be determined "genuinely in dispute", the party opposing the motion, in this case Guilani, must be entitled to litigate the issue.  Here Guilani is not.  In support of the Motion for Summary Judgment, Bak has attached a copy of Requests to Admit pursuant to Fed. R. Civ. Pro. 36 (made applicable by Fed R. Bankr.

19

Pro. 7056) with certification of service on Guilani dated April 7, 2011,  Adv. ECF. No. 52-4.

Guilani never responded to the Requests to Admit within the 30 day deadline, which under

Fed. R. Civ. Pro. 36(a)(3), applicable here by Fed. R. Bankr. P. 7036, are deemed

admitted. To date, Guilani has not sought to withdraw the deemed admissions.  Admission

number 5 states, "The plaintiff's responses to the interrogatories in the State Court

Discovery are true and accurate to the best of the plaintiff's knowledge and belief." In

Answer No. 12 to the interrogatories, Adv. ECF No. 52-7, Guilani responded in relevant

part:

> Defendant offered Tim Vale a separate agreement stating that at anytime
> after signing the members agreement, Defendant would refund Tim Vale his
> $20K to end his membership in Hawk. Plaintiff learned of the existence of
> this letter at least 6-9 months after signing the member's agreement. Plaintiff
> and other investors only learned about it through conversation with
> Defendant when it was asked if and when Tim Vale and Milton Ives would
> join Hawk full time. . . .

* * *

> Milton Ives joined Hawk full time in early 2005.

Thus, on the basis of Answer No. 12, Guilani admitted that he learned of the

separate agreement as early as 6 to 9 months following his entry into the Agreement on

July 27, 2000, but no later than early 2005. On June 8, 2011, after the admission was

deemed admitted, Bak conducted a deposition of Guilani.  Adv. ECF No. 52-8.  In the

deposition at p. 60, Guilani twice answered "yes" when asked if he had learned about Bak's

agreement to repay Vale in early 2001.  However, shortly thereafter, on cross-examination

at p. 80, following a five-minute break during which he spoke to his attorney, Guilani

contradicted his prior testimony by stating that he did not become aware of the agreement

to repay Vale until 2008. While conflicting statements during the course of a deposition

might not bind the deponent to either answer, a deemed admission coming as it did prior

to the deposition, binds the party making the admission. Further, an unanswered Rule

36(a) admission may be used for purposes of summary judgment. *Donovan v. Carls Drug*

*Co., Inc*., 703 F.2d 650, 651 (2d Cir. 1983).  Thus, the three year statute of limitations for

action founded upon a tort has run as to each of these claims.

Nevertheless, it is unclear whether the six year statute of limitations for actions

under a contract has also run with respect to the claim arising from the letter agreement

to repay Vale and not Guilani.  Nor is it the Court's responsibility in the context of a

summary judgment motion to weigh the evidence and determine the truth of the matter.

That is reserved for trial. Further, to the extent there is any doubt, reasonable inferences

are to be drawn, and all ambiguities resolved, in favor of the non-moving party, in this case

the Plaintiff, who arguably did not learn about it until early 2005, still within the six year

statute of limitations period when the State Court Action was brought. Thus, whether the

claim arising from the alleged failure of Bak to notify Guilani of his letter agreement to

repay Vale is barred by the Conn. Gen. Stat §52-576 cannot be determined in the context

of a summary judgment motion.

Further, the later incidents that Guilani claims also extend the statute of limitations,

although arising as a consequence of the original formation Hawk, and apparently not

barred by any applicable statute of limitations on the basis of undisputed evidence, cannot

be said to be dependant upon the same set of operative facts as arose in the years 2000-

2005 but stem from new, independent events that arose years later. *See Witt v. St.*

*Vincent's Medical Center* at 357 ("we must determine whether . . . the defendant . . . owed

a continuing duty to the plaintiff *that was related to the alleged original wrong*") (emphasis

21

added). The payment by Bak to Vale, amounts to a new cause of action. That is evident

in that a breach of fiduciary duty could arguably be said to have arisen in the actions of Bak

in fully repaying one Member's investment while refusing to fully repay Guilani's

investment and therefore ignoring ¶6.4 of the Amended Operating Agreement which, in

relevant part, provides that "no Member or Economic Interest Owner shall have priority

over any other Member . . . as to the return of Capital Contributions."

Similarly, Guilani's allegations that Bak breached his fiduciary duty in failing to send

to him annual reports, refusing to send him K-1 Forms and usurped his Membership

interests, arose many years after the original wrongs were committed and are separate

incidents which give rise to separate causes of action. Whether these later actions and the

damages that resulted can be documented, and whether they rise to the level of justifying

a determination by this Court that said debts should be found nondischargeable, have yet

to be decided and can only be done after a full evidentiary hearing.

**2.    *Fraudulent concealment of the existence of a cause of action, Conn.
Gen Stat. 52-595.***

To prove fraudulent concealment, the party seeking to rely on the doctrine must

show that the defendant:

> (1) had actual awareness, rather than imputed knowledge, of the facts
> necessary to establish the plaintiffs' cause of action; (2) intentionally
> concealed these facts from the plaintiffs; and (3) concealed the facts for the
> purpose of obtaining delay on the plaintiffs' part in filing a complaint on their
> cause of action. *Bartone v. Robert L. Day Co.*, 232 Conn. 527, 533, 656 A.2d
> 221 (1995). Moreover, the [Plaintiff] would have been required to prove that
> [the defendants] had concealed the cause of action by the more exacting
> standard of clear, precise, and unequivocal evidence. . . .

*Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105, 912 A.2d

1019 (2007).  As to the second point, however, "although fraudulent concealment generally

requires an affirmative act of concealment, nondisclosure is sufficient when the defendant has a fiduciary duty to disclose material facts. *See Hamilton v. Smith*, 773 F.2d 461, 468 (2d Cir. 1985) ('to establish fraudulent concealment under Connecticut law, a plaintiff must show [inter alia] that . . . absent a fiduciary relationship, the defendant was guilty of some affirmative act of concealment')"; *Falls Church Group, Ltd v. Tyler, Cooper & Alcorn, LLP*, 89 Conn. App. 459, 478, 874 A.2d 266 (2005) ; *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 10 F. Supp. 2d 138, 145 (D. Conn. 1998) (plaintiff can avail itself of the fraudulent concealment tolling doctrine notwithstanding absence of acts of intentional concealment by defendant if defendant violated fiduciary duty to disclose material information to plaintiff), *aff'd in part, vacated and remanded in part*, *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999).

In this case, there was a fiduciary relationship between Guilani and Bak throughout the periods in question. *See Levy v. Guilford Village Walk, LLC.,* No. CV-095029013S, 2011 WL 3593984 (Conn. Super. July 22, 2011, *citing,   Ruotolo v. Ruotolo*, No. CV-095026804, 2009 WL 5698124, (Conn. Super., December 29, 2009).  "As the managing member of both limited liability companies, [the defendant] had a special relationship with the plaintiff, owing a fiduciary duty to the plaintiff as a fellow member and to the limited liability companies as a whole."  Nevertheless,

> even when a fiduciary relationship exists between the parties, as alleged here, it is the plaintiff's burden to demonstrate his ignorance of the facts -- "there can be no effective tolling for a plaintiff who was aware of the existence of his or her cause of action from the time the claim originally accrued." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 427-28 (2d Cir. 1999). Though [the plaintiff] may not have had access to the full details of all of the sums that [the defendant] was withholding from the partnership bank account, "the statutory period . . . (does) not await appellant's leisurely discovery of the full details of the alleged scheme." *Long*

23

*v. Abbott Mortgage Corp.*, 459 F. Supp. 108, 121 (D. Conn. 1978) (citing
*Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970))."
*Baghdady v. Baghdady*, No. 3:05-cv-1494, 2008 U.S. Dist. LEXIS 83505 *20 (D. Conn.,

October 17, 2008).

When there are "storm warnings" that one is being defrauded, "a duty of inquiry

arises." *Dodds v. Cigna Sec.*, *Inc.*, 12 F.3d 346, 350 (2d Cir 1993).  Guilani was aware of

actionable harm in mid-2001 when he learned that Bak had accepted reduced

contributions to Hawk from Vale and Ives, and again in late 2001-2002 when his

"Guaranteed Payments" for working for Hawk ceased. Thereafter, when Guilani became

aware that Bak had agreed to repay Vale his full $20,000 investment it was further notice

Guilani that he had a actionable claim against Bak. Thus, as with the continuing course of

conduct doctrine, Guilani's  efforts to toll the running of the applicable statute of limitations

fail because these lifelines can only serve to extend the statute of limitations to the extent

that Bak's conduct prevented Guilani from timely becoming aware of Bak's wrongdoing.

## VI. SUMMARY AND CONCLUSION

It is the Court's conclusion that the Plaintiff Guilani may not use the fraudulent

concealment or continuous course of conduct doctrines to toll the running of Conn. Gen.

Stat.§52-576 and §52-577 as it concerns the his allegations of the Defendant Bak's

wrongdoing in permitting certain Members of Hawk to invest lesser sums than were

required of other investors. Likewise, neither the fraudulent concealment nor continuous

course of conduct doctrines will serve to toll §52-577 as it relates to Bak's agreement to

repay Vale his $20,000 investment. As it concerns the remaining claims of wrongdoing, the

evidence is either lacking or genuinely in dispute as to whether they occurred beyond the

applicable statutes of limitation.  It may be that the remaining claims in the case will prove

24

to be an insufficient basis to support a determination of non-dischargeability under §§523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and/or 523(a)(6).  However, Bak's Motion for Summary Judgment strictly relies upon statutes of limitation – he has not independently moved for summary judgment on any other ground. Furthermore, because the Complaint is structured so as to combine all of the factual allegations in each of the Four Counts, for the Court to enter even a partial summary judgment on the grounds that certain of the claims are time-barred would unreasonably require the Court to consider piece meal each of the Counts. Therefore, for the all reasons stated above, the Motion for Summary Judgment shall be denied.

However, in light of the circumstances attending this matter, a Rule 56(g) Order shall enter, deeming it established for purposes of the trial of the present adversary proceeding that Conn. Gen. Stat. §52-576(a) and §52-577 bar the Plaintiff Guilani from raising as independent bases for relief under the Complaint the Defendant Bak's conduct in 2001 in permitting certain Members to invest lesser sums in Hawk than otherwise required by the Amended Operating Agreement or the Members Agreement, as well as its direct consequences, including the claim under Count Two that the reduced contributions constituted material false statements in writing respecting Hawk's financial condition.

An Order denying the Motion for Summary Judgment, determining certain facts as established in this proceeding with the effect as discussed in the immediately preceding paragraph, and scheduling trial of this Adversary Proceeding, enters simultaneously herewith.

Dated: February 20, 2013                                    BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge

25